FARIS MINER, Appellee, v. THE WESTERN CASUALTY AND SURETY COMPANY, Appellant.

No. 47595.

(Reported in 41 N.W. 2d 557)

MARCH 7, 1950.

Parrish, Guthrie, Colflesh & O'Brien, of Des Moines, for appellant.

Linnan & Lynch, of Algona, for appellee.

HALE, J.—On August 25, 1945, the defendant-insurance company delivered to plaintiff a certain aviation accident policy No. 20238 with "Total Disability" and "Student's, Private and Commercial Pilot's" riders attached. The policy was renewed from time to time and was in full force and effect on the 24th day of December, 1947, on which date the accident occurred.

Plaintiff was the manager and operator of an airport near Algona. He gave instruction in flying, serviced airplanes by fueling, tied them down at night, and assisted in starting airplanes

if a pilot came in alone. He also assisted in getting the planes out of the hangars and testified that there was always someone on the ground to help start the airplanes.

The machine belonged to W. A. Hall, and part of the time was stored on plaintiff's ground. On the day of the accident Hall requested the plaintiff to assist him in starting his plane. While thus engaged Hall was in the cockpit of the plane and plaintiff was cranking the propeller by bringing the propeller downward, and while, it was alleged, plaintiff was unaware that Hall had left the ignition switch on, plaintiff was struck by the propeller and his right arm broken between the elbow and wrist. For the injury thus received plaintiff was confined in the hospital and operated on, the cost for hospital and surgeon's treatment being $420.85. In addition, and under the rider of the policy for total disability for five and one-third months, he claims of defendant the sum of $1066.66. The amount of the claim is not disputed, but the defendant does dispute its liability under the terms of the policy, defendant claiming that the accident is not such an accident as is insured against.

Plaintiff bases his claim under the terms of the rider attached to the policy which provides that the policy is extended to cover the insured if injuries are sustained by being struck by any aircraft, or while in, on, operating, handling, or in consequence of making a forced descent from one while insured is a passenger or member of the crew of a plane piloted by a qualified pilot.

Plaintiff alleges that at the time of the accident he was acting as a member of the crew of W. A. Hall in starting his airplane. He prays for declaratory judgment and decree construing and interpreting said policy, and for final adjudication and decree, and for general equitable relief.

Thereafter plaintiff amended his petition by a count "two" alleging misrepresentations of agents of defendant's company; allegations of such agents that the policy covered the insured regardless of cause and without any restriction; reliance upon such representations, and failure to discover that the policy was not drawn in accordance with such representations, and asks that the policy be reformed.

Defendant in answer denies that plaintiff was acting as a member of the Hall crew; generally denies the principal allega-

tions of both counts of the petition, alleging that plaintiff is barred from recovery or reformation by failure to read the policy, and denies any mutual mistake.

In its argument upon count one the propositions relied upon by the defendant are:

A. The plaintiff was not "a member of the crew" of the airplane in question.

B. The airplane did not have "a valid NC Airworthiness Certificate issued by the Civil Aeronautics Administration."

C. No competent evidence was introduced to prove that the pilot of the plane in question held a "current certificate of competency issued by the Civil Aeronautics Administration."

■ ■ I. The plaintiff argues that the commercial pilot's rider attached to and made a part of the policy extends the coverage of the policy to any member of the crew of a pilot holding a valid and current certificate of competency issued by the Civil Aeronautics Administration; that plaintiff was a member of such a crew and hence was entitled to recover directly under the policy. Defendant in his denial of such allegations cites various definitions from Words and Phrases and from Webster's New International Dictionary, and a definition from Aeronautical Dictionary and Reference Library–Hartley, to the effect that the term "crew" has also been defined as "a detail of men in charge of the actual operation of an aircraft in service"— further arguing that the terms of an insurance contract are to be taken and understood in their plain, ordinary and popular sense, and that the ordinary meaning is not to be warped or perverted. Citing various authorities. It is not disputed that the plain, ordinary and popular sense is to be used in interpreting the meaning of the word, but we do not think the court warped or perverted the meaning of the word in its definition of "crew."

The word is used in various senses, all of which as applied may be considered the ordinary and popular definition. Like many other words, it is governed largely by the context and in some cases by the manner in which applied. The crew of a ship might and would have a very different meaning from a crew of an airplane. In its general sense it means a body of men. It has several well-known significations. In its general and popular sense it is equivalent to company.

Word "crew" does not have an absolutely unvarying legal significance or any well-defined factual significance. Schantz v. American Dredging Co., 3 Cir., Pa., 138 F. 2d 534, 537.

"Ground crew" means a detail of men necessary for the landing and handling of an airship on the ground. Preferred Accident Ins. Co. v. Rhodenbaugh, 6 Cir., Ohio, 160 F. 2d 832, 834.

On the morning of the accident, December 24, 1947, plaintiff was orally requested by Hall to assist him in starting the plane. Plaintiff helped push the plane out of the hangar and Hall then got in the cabin and plaintiff then started to prime the engine to get it started by pulling the propeller through. Without the knowledge of the plaintiff the ignition was on and the engine suddenly caught and plaintiff was struck and injured by the rapidly revolving propeller. If a member of the crew, as we think he was, the plaintiff came within the terms of the rider under the Civil Air Regulations, section 60.331, which provides as follows: "No aircraft engine shall be started or run unless a competent operator is in the aircraft attending the engine controls." A crew under the ordinary definition does not necessarily have to consist of more than one. In other words, one man can constitute a crew. Norton v. Warner Co., 321 U. S. 565, 64 S. Ct. 747, 88 L. Ed. 930.

The definition of the word "crew" referred to in the Rhodenbaugh case, supra, would indicate that in the field of aeronautics the word "crew" means the air crew, assisting in the operation of the craft while in the air, or a landing or ground crew, assisting in the handling of the plane on the ground.

We are satisfied, considering the nature of the policy, being an aviation policy, and the duty to be performed, that the plaintiff was a part of the crew of the plane, more particularly known as the "ground crew."

■ II. The second contention of the defendant that the airplane did not have a valid NC Airworthiness Certificate issued by the Civil Aeronautics Administration is based on the defendant's interpretation of the meaning of the rider attached to the original policy. The rider was entitled "Student's, Private and Commercial Pilot's" rider. We shall consider again the terms of this rider:

"In consideration of the premium for which this policy is issued, it is understood and agreed that this policy is extended to cover the insured if such injuries are sustained by the insured by being struck by any aircraft * * *." We note that in this clause there is no requirement as to Airworthiness Certificate. The second part or condition under which the policy covers the insured is, "or while in, on, operating, handling, or in consequence of making a forced descent from or with any powered aircraft having a valid NC Airworthiness Certificate issued by the Civil Aeronautics Administration."

It will be noticed that the second division or coverage, which is separate, though being in one paragraph, is the only condition under which the Airworthiness Certificate is necessary. Being struck may take place while the insured is on the ground. It is intended to cover an accident sustained by the insured from an outside source. In other words, one clause covers all injuries received while the insured is on the ground. The second clause covers any injury received while insured is in or flying in an aircraft. The two coverages are separate and distinct. In case of the second coverage the insured must be flying in an airworthy airplane. There is no particular reason why this condition should be required while an airplane is upon the ground.

Division (d) of the rider is as follows: "(d) As a passenger or member of the crew, within the bounds of North America; but only while the person piloting the aircraft holds a valid and current certificate of competency issued by the Civil Aeronautics Administration."

This division refers to two things—one, that the insured must be a member of the crew, and the other, that to be covered by the policy the person piloting the aircraft holds a valid and current certificate of competency issued by the Civil Aeronautics Administration. We have referred to the fact that the insured was a member of the crew, and that under the terms of division (d) of the rider we are satisfied that the pilot held a valid certificate of competency as shown by the record. We are therefore satisfied that these conditions satisfied the requirements in respect to the coverage.

III. The court further found, and we agree, that the policy together with the riders attached was prepared by the

defendant-company. The commercial pilot's rider attached thereto is definitely ambiguous and the policy therefore is to be liberally construed in favor of the insured.

IV. Finding as we do, that under the terms of the policy together with the riders attached, the plaintiff is entitled to recover, we hold, as did the district court, that there is no necessity of a decree for reformation of contract. There is therefore no necessity for reviewing the evidence nor the arguments in regard to the second count of plaintiff's petition. The court, in ruling there was no necessity for a reformation, in effect denied plaintiff's petition therefor. The ruling in this respect favored the defendant and there is no necessity for a discussion thereof.

We hold that the trial court was right and that the judgment rendered should be and is sustained.—Affirmed.

All JUSTICES concur.